### Hon. PIERPONT EDWARDS *against* JOHN NICHOLS.

*Assumpsit will lie for articles, or services, commonly charged on book.*

*A declaration for labour done, or services performed, generally, is good.*

*If a party is described as a citizen of the district of N. York, he is sufficiently described as a citizen of the state of New-York.*

*In assumpsit, though, for articles and services commonly charged on book, the parties cannot be permitted to testify.*

THIS was an action of *indebitatus assumpsit.*

In the writ the plaintiff was described as "of the city, county and district of *New-York*, a citizen of said district;" and the defendant as "of *Waterbury*, in the county of *New-Haven*, and district of *Connecticut*, a citizen of said district."

The first count of the declaration alleged, " that on the thirtieth day of *June* last past, at *New-Haven*, in said district of *Connecticut*, he the defendant was indebted to the plaintiff in the sum of seven hundred dollars, for divers labours and services before that time done and performed by the plaintiff, for the defendant, at his, the defendant's, special instance and request; and the defendant, at said *New-Haven*, immediately afterwards, viz. on the thirtieth day of *June* last past, in consideration of

being indebted to the plaintiff as aforesaid, assumed upon
himself, and to the plaintiff faithfully promised to pay to
him the aforesaid sum of seven hundred dollars, in a rea-
sonable time thereafter, when thereto requested by the
plaintiff."

The second count stated a *quantum meruit* for seven
hundred dollars, for labours done and services performed.

The third count claimed five hundred dollars for so
much money laid out, disbursed and expended, by the
plaintiff, for the use of the defendant, and at the defend-
ant's special instance and request.

The fourth count was as follows: "Also for that, at
*New-Haven* aforesaid, on the 30th day of *June* last past,
in consideration that the plaintiff had before that time, at
the special instance and request of the defendant, done
and performed divers labours and services for one *Samuel
C. Alcox*, of *Wolcott*, in the county of *New-Haven*, he the
defendant, at said *New-Haven*, on or about said 30th day
of *June*, 1805, assumed upon himself, and to the plaintiff
faithfully promised to pay him therefor, as much as said
services rendered and performed as aforesaid were rea-
sonably worth; and the plaintiff further avers, that said
services so rendered and performed were reasonably
worth the sum of sixty dollars."

The fifth count alleged, that the defendant was indebt-
ed to the plaintiff in the sum of fifty dollars, for services
before that time rendered to *Alcox* by the plaintiff, at the
special instance and request of the defendant, and that
being so indebted he promised, &c.

The sixth count was for fifty dollars in money, laid out
by the plaintiff for the use of *Alcox*, at the special in-
stance and request of the defendant.

The common averments were inserted at the close.

Plea, *non assumpsit*.

When this case came on for trial, the counsel for the defendant moved for a continuance of the case until the next term of the court, on account of the sickness of the defendant, who was then in the state of *New-York*, and unable, as was stated, to attend the trial.

LIVINGSTON, J. You must be sensible that the sickness of a party, or his inability to attend the trial, is no legal cause for a continuance.

*Ingersoll* and *Staples*, for the defendant, stated, that *Nichols* was a competent witness in this case; that they wanted his testimony; and, on that ground moved for a continuance. They insisted, that though this action is *assumpsit* in form, it still comes within the meaning of our statute, which permits the party to testify in book-debt actions. The words of the statute are, " that in all actions on book debts, that shall be tried by a jury, the jury shall well weigh and consider the credit of the parties or any other persons interested," &c.(a) This action is brought for charges made on book, and ordinarily sued for in the form of action described in our statutes as *book-debt* actions; but whether sued for in this *form* or not, the same rule of evidence must be adhered to, in order to satisfy the meaning of the statute.

They also urged, that the statute of limitations of book debts, had been construed to extend to actions of *assumpsit*. But the words of this statute, " that all such book debts as are now outstanding," &c. can with no more propriety be extended to such actions, than the words of the other statute.

(a) 1 *Stat. Conn.* tit. 25. c. 1. s. 2.

*Daggett* and *Bristol*, for the plaintiff.

The privilege allowed by our statute, that the parties should be permitted to testify in their own case, is mutual; and it is confined to the action denominated *book debt*. The practice adopted in our state courts has never extended the privilege to any other *form* of action. It was a fundamental principle of common law, that no man should testify in his own case; and the statute which gives the privilege in question, being in derogation of the common law, is not to be extended by construction. This is true in all cases; but ought to be inviolably adhered to, when the principle of common law invaded by a statute, is a rule of evidence so important as the one under consideration.

It has been said, that the statute of limitations regarding book debts, is applicable to actions of *assumpsit*, and has been so applied. This is true, where the action of *assumpsit* is brought to recover the value of articles or services commonly charged on book. But this depends on the phraseology of the statute of limitations, which declares, with certain exceptions, " that all book debts shall not be recoverable after six years."(a) The limitation, therefore, applies to the subject matter of this action; and the statute substantially declares, that whatever may be the remedy, or the form of action adopted for the purpose, still *no book debt* shall be recovered after six years. But the statute authorizing courts to receive the testimony of the party himself, gives this privilege only in the particular *form* of action which we call book debt.

LIVINGSTON, J. If *Nichols* were present, he could not testify in this case under your statute; there is no reason, therefore, for the continuance of the case.

(a) 1 *Stat. Conn.* tit. 25. c. 2.

April, 1805.

EDWARDS
v.
NICHOLS.

The next day the case come on for trial. As it was conceded by the counsel for the plaintiff, that the demand in question was for services performed as an attorney and counsellor at law, and for disbursements in several cases in which he had been thus employed, *Ingersoll* and *Staples* urged an objection to the admission of any testimony to support the declaration, for the following reasons:

1. An action of *assumpsit* will not lie to recover the value of such articles delivered, or such services performed, as are the proper subject of *charge on book*. The remedy, in such cases, is by action of book debt, and by that *only*. This remedy has grown up with the state of *Connecticut*, and has had an important influence upon our modes and habits of business. All persons, taking it for an established position, that they can support their charges by their own testimony, have become negligent of procuring and preserving other evidence. It must be very pernicious to this community, therefore, that this ancient privilege, and one so much relied upon, should be taken away at the choice of one party, who must be supposed to know his advantages, and that the other party should be obliged to defend himself, deprived of the accustomed mode of substantiating his charges and payments. It is, in short, no less than taking from parties that testimony to which, from long and perhaps universal usage, they think themselves entitled.

Besides, in our action of book debt, the defendant has the opportunity of setting off all his charges against those of the plaintiff, and, if they exceed the plaintiff's, of recovering his balance and costs.(*a*) This is certainly a very beneficial provision, both as it prevents litigation and expense, and as it is a security that one party shall not gain an undue advantage over the other. Such a provision ought not to be defeated ; nor are the forms of action by which it is secured, to be rashly invaded.

(*a*) 1 *Stat. Conn.* tit. 25. c. 1. s. 3.

2. The declaration is too general. It ought to have stated, particularly, the labour done, and services performed, in order that the defendant may come prepared to repel the claim. Here it is not even hinted in what capacity or character the plaintiff acted, while performing these services, nor is the nature of the services at all mentioned. Our courts have decided, that *indebitatus assumpsit* shall not be supported by a general promise to pay the plaintiff all the defendant owed him. The promise must have a particular reference to the *very* debt sued for; and must not be capable of an application to other debts. The plaintiff does not offer to prove any promise to pay the particular *items;* but only a general acknowledgment of the debt. Indeed, if he did offer particular testimony, it could not be gone into on the general counts.

3. The counts which declare upon the services performed for *Alcox,* and the moneys paid to him, are within the statute of frauds and perjuries, as the promise of the defendant is an engagement to pay the debt of another. It is admitted, that in one of these counts, the allegations are made with sufficient particularity.

*Daggett* and *Bristol,* for the plaintiff.

1. On the same principles that the oath of the party has not been allowed in this case, the action of book debt itself, being an anomaly in our law, ought not to be extended by construction; much less ought it to be so construed as to defeat the remedies afforded by the common law. The statute respecting book debts has not prohibited a resort to the common law remedy in all proper cases; and consequently all other modes of redress remain the same as they were before that statute. A statute giving a new remedy, does not take away a remedy furnished by the common law, unless it be expressly taken away; but, in all such cases, the statute and common

April, 1808.

EDWARDS

v.

NICHOLS.

April, 1808.

EDWARDS
v.
NICHOLS.

law remedies are concurrent. Thus, it was never imagined that the statute giving threefold damages for cutting trees on another's land (a) had abolished the remedy by trespass at the common law. But the statute regulating book debts does not profess to give the form of action; it merely regulates the action by allowing the parties to testify, and enabling the defendant to recover if the balance is in his favour. It is probable the form of book debt had been adopted in practice long before the statute was made.

Nor are we to forget, that this action is in derogation of the common law, and a direct invasion of the established rules of evidence.

As to the objection, that the defendant is deprived of his oath, it may be answered, that the plaintiff is deprived of the same advantage, and it is as likely to be an inconvenience to him as to the other party; and as he pursues a common law remedy, he must establish his claim by common law proof.

This objection, in a more specious form, was originally made to all actions of *assumpsit*, where debt on simple contract might be brought at the common law. The reason then assigned was, that this action took away the defendant's wager of law, and thus bereaved him of the benefit which the law gave him. 4 *Co. Rep.* 92. Yet the court held, in *Slade's* case, that *assumpsit* was a proper remedy, though it deprived the defendant of his wager of law.

2. It was unnecessary to state, with more particularity, the services performed. If the plaintiff is able to show that any services, which could come under these allegations, have been performed by him for the defendant, he, on the

(a) 1 *Stat. Conn.* tit. 165. c. 1. s. 1.

other hand, must come prepared to show that these services have been paid for, or discharged, or that some good and legal reason exists why they should not be remunerated. If any thing further than this general averment is required, how particular must the plaintiff be? Must he show the days, hours and minutes, he has been employed? Or must he state the number of cases in which he was retained? the several terms which intervened, the consultations had, or arguments made? This would swell the record to an insupportable and endless prolixity. Neither precedent, nor authority, can be cited in support of the doctrine advanced. No cases in this state can be cited, where great particularity has been held to be necessary. It is the constant course of practice here, to make general averments as in the present case. In *England*, and by the supreme court of errors in this state, actions precisely like this have been held maintainable.

It may be well to observe here, since the action of book debt is so zealously advocated by the counsel for the defendant, that no form of action used in our courts of justice is more general than that of book debt; nor is it possible to conceive of any form more general. It simply demands that the defendant render to the plaintiff such a sum, which he owes *by book*.

But lest any inconvenience should result to the defendant, or he should be taken by surprise, the court may order the plaintiff to furnish him seasonably with *oyer* of his account, which must be a more accurate specification of his demand than any declaration can be supposed to afford. This has been voluntarily done in the present case, for more than eighteen months.

3. The counts applicable to the services rendered, and the money paid to *Alcox*, allege, that they were performed at the special instance and request of the defendant, and we offer to prove that request, and the services per-

formed in consequence of it. The undertaking of *Nichols*, then, is an original undertaking to pay for those services, and not collateral to any contract or obligation of *Alcox*.

The counsel for the defendant, in reply, commented upon the words of the statute, " In all actions *on* book debts," which seemed to imply, that different actions might be brought for articles and services commonly charged on book. Since, however, this action has been decided by the court not to be an " action on book," by the exclusion of the defendant's oath, no evidence ought to be admitted to substantiate a book-debt claim.

To this it was answered, by the counsel for the plaintiff, that the words " actions *on* book debts," had been always understood to mean the same as " actions *of* book debts."

LIVINGSTON, J., after requesting to hear the statute read, observed : From the reading of the statute I am convinced that this action is well brought ; and that *assumpsit* and the book-debt action are concurrent remedies.

As to the legality of permitting parties to testify in the action of *assumpsit*, on the ground that it is an action *on* book, I have doubts with respect to the correctness of my decision yesterday. I am far from certain that the party ought to be excluded ; and I hope that no inconvenience will result to the defendant in this case from that decision.

I think the objection, that the declaration is too general, cannot prevail. In the *English* practice and our own, declarations as indefinite as this may be found ; though it is usual to declare for services rendered as an attorney, physician, mechanic, &c. Very little particularity is demanded in *assumpsit*, except in the count for money had

and received, where more exactness and precision is required. This is open for discussion, however, in a future stage of the case.

The evidence was admitted, and the jury found a verdict for the plaintiff for the amount of his account.

Upon a motion in arrest,

*Ingersoll* and *Staples* took two exceptions.

1. The declaration is too general. The same arguments were relied on to support this position that have been stated in the objection to the testimony.

2. It does not appear by the record that the plaintiff is a citizen of the state of *New-York*, or the defendant a citizen of the state of *Connecticut*. That this should appear is absolutely necessary; and this court has, without motion, ordered a case to be erased from the docket, on discovering that the parties did not appear to be citizens of different states.

*Daggett* and *Bristol*, contra.

The first exception comes too late after verdict, when every promise alleged in the declaration is taken to be an express promise, or even a promise in writing, if necessary to sustain the verdict.

But an allegation of work and labour generally, without setting out what sort of labour, or in what manner it was performed, is good, and agreeable to numerous precedents in the books of forms. Some doubt was formerly entertained on this point, but the question has been long since put at rest. *Carthew*, 276. 1 *Vent.* 44. *Sid.* 425. The best pleaders have latterly adopted

April, 1808.

EDWARDS
v.
NICHOLS.

this mode, as the plaintiff would be restricted in his proof, if the declaration were more special.

2. The plaintiff and defendant are well described as citizens of the states of *New-York* and *Connecticut*. The plaintiff is alleged to be a citizen of the district of *New-York*, and the defendant a citizen of the district of *Connecticut*. By the act of congress to establish the judicial courts of the *United States*, vol. 1. *U. S. Laws*, 48., the *United States* are divided into districts; and the states of *New-York* and *Connecticut* are respectively constituted districts of the same name. The same territorial limits, as well as the same body politic are, therefore, described by the terms district of *Connecticut*, as if the word state had been used. The district and state of *Connecticut* are synonymous and coextensive, and the parties are described as citizens of the states of *New-York* and *Connecticut*, by language perfectly definite and certain.

LIVINGSTON, J. overruled the motion in arrest, and ordered judgment to be entered.